IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MONSERRATE MERCADO,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 12-1388 (MEL)

**OPINION AND ORDER**

**I.   PROCEDURAL HISTORY**

Monserrate Mercado ("plaintiff" or "claimant") was born in 1965 and has completed high school. (Tr. 26). Between 1993 and 2005, plaintiff worked as a cosmetics salesperson and a stock clerk. (Tr. 275). On February 19, 2009, plaintiff filed an application for Social Security disability benefits, alleging disability on the basis of major depression and cervical and lumbar pain. (Tr. 274). The alleged onset date of the disability was January 1, 2008, whereas the end of the insurance period was March 31, 2009. (Tr. 18). Plaintiff's application was denied initially and upon reconsideration. (Tr. 15).

Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"). Both she and her counsel were present at the hearing held on May 7, 2010. Dr. Héctor A. Puig ("Dr. Puig"), a vocational expert, provided testimony at the hearing. The ALJ rendered a decision on June 2, 2010, concluding that plaintiff was not disabled. (Tr. 27). The Appeals Council denied plaintiff's request for review on March 26, 2012. (Tr. 1). Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant").

On May 25, 2012, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. On November 26, 2012, defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF Nos. 13; 14. Both parties have filed supporting memoranda. ECF Nos. 18; 23. For the reasons set forth below, the Commissioner's decision is affirmed.

## II.   RELEVANT MEDICAL EVIDENCE[1]

### A.   Non-Physical Impairments

Plaintiff received psychiatric treatment from Dr. José L. Raimundi Meléndez ("Dr. Raimundi") at Capitas Inc. on seven dates between February 27, 2008, and February 17, 2009. (Tr. 115–30). Dr. Raimundi noted plaintiff's difficulties with sleeping and nightmares. (Tr. 120, 122, 127). Over the seven visits, plaintiff was generally experiencing depressed and anxious mood. Nevertheless, plaintiff did not exhibit suicidal or homicidal ideas. Plaintiff's thought process was logical, relevant, and coherent. Plaintiff's memory, attention, and orientation were normal. Aside from plaintiff's first visit, (Tr. 129), Dr. Raimundi did not indicate that plaintiff exhibited brief concentration.[2] Aside from the mental examination on plaintiff's first visit, which indicated that she had "superficial" insight, (Tr. 129), plaintiff's insight, judgment, and impulse control were consistently noted as good or adequate. Plaintiff

---

[1] The administrative record also contains evidence from examining sources between November 9, 2009—more than seven months after the expiration of plaintiff's insured period—and March 7, 2011. (Tr. 140–69). Nevertheless, evidence outside of the disability insurance period is ordinarily irrelevant. It is only relevant to the extent that it can shed some light on claimant's conditions during said period of time. Cf. Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552, 1993 WL 21064, at *5 (1st Cir. 1993) (unpublished) ("Medical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity *before* his insured status expired." (emphasis in original)). Considering that the ALJ appeared to disregard evidence subsequent to the expiration of plaintiff's insured period, (Tr. 24), and plaintiff does not contest this determination at any point in her memorandum or bring to the attention of the court any particular evidence from after the expiration of the insured period, the court will not consider such evidence.

[2] Although on March 11, 2008, a social worker indicated that plaintiff had brief concentration, Dr. Raimundi, on the same day, noted that plaintiff's concentration was normal. (Compare Tr. 126 with Tr. 124).

was diagnosed with code 296.33 under Axis I.  (Tr. 116–121, 125–26, 130).[3]  Dr. Raimundi assigned plaintiff Global Assessment of Functioning ("GAF") scores of 68 and 65.[4]

Upon review of plaintiff's medical records, Dr. Hugo Román Rivera ("Dr. Román"), a state agency expert, indicated that plaintiff had, by the end of her insured period, a moderate depressive disorder.  (Tr. 359–78).  She was experiencing depressed mood, anxiety, and somatic concerns.  (Tr. 363).  She experienced "concentration and memory difficulties."  (Tr. 376).  The medical record from Capitas Inc. represented "an overall adequate mental state."  Id.  Plaintiff had adequate cognitive functioning.  According to Dr. Román, plaintif retained the capacity to perform simple and detailed tasks, to persist at tasks for two-hour intervals, to interact with others, and to adjust to changes.  Dr. Román's determinations were adopted by Dr. Luis Umpierre ("Dr. Umpierre"), a state agency psychologist.  (Tr. 398).

B.     **Physical Impairments**

Plaintiff received treatment from Dr. Gabriel Torres Acevedo ("Dr. Torres"), a specialist in internal medicine, between September 11, 2006, and March 30, 2009.  (Tr. 392–97).  Dr. Torres completed reports on March 30 and September 25, 2009.  Plaintiff was experiencing frequent episodes of back pain and numbness of her upper extremities.  (Tr. 392, 395).  She exhibited decreased strength, sensory capacity, reflexes, and motor function of her upper and lower extremities.  (Tr. 393–94, 396–97).  Plaintiff's range of motion was limited to 45 degrees (out of 90) during trunk flexion and 25 degrees during cervical spine flexion (out of 45).  (Tr.

---

[3] See Meléndez-Ojeda v. Comm'r of Soc. Sec., Civ. No. 11-1485 (CVR), 2012 WL 5199609, at *7 n.4 (D.P.R. Oct. 22, 2012) (indicating that code 296.33 refers to severe recurrent major depressive disorder).
[4] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) [hereinafter DSM–IV], quoted in Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004). It "considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM–IV, at 34 (brackets omitted), quoted in Echandy-Caraballo v. Astrue, 2008 WL 910059, at *4 n.7 (D.R.I. Mar. 31, 2008).  "A GAF of 61 to 70 reflects mild symptoms such as depressed mood, or some difficulty in social, occupational, or school functioning."  Lisi v. Astrue, Civ. No. 11-30163 (DPW), 2012 WL 1853589, at *5 (D. Mass. May 18, 2012) (citing DSM–IV, at 32).

393, 396). Dr. Torres did not identify ataxia or abnormality in gait and station. Dr. Torres diagnosed plaintiff with herniated nucleus pulposus at the T11/T12 level and cervical radiculopathy.

On May 15, 2009, Dr. José A. Rodríguez Robles ("Dr. Rodríguez") completed a neurological report of plaintiff. (Tr. 131–39). He had been treating plaintiff since December 11, 2006. Among plaintiff's chief complaints were pain in the posterior neck, lower back, and thoracic spine "almost every day." (Tr. 131). According to Dr. Rodríguez, plaintiff generally exhibited motor deficits of 3.5/5 in her upper extremities and 4/5 in her lower extremities. (Tr. 132). Plaintiff also had "problems to perform gross movements." (Tr. 133). Her reflexes, however, were normal. Due to "persistent severe pain," plaintiff had "inability to perform" "such functions as reaching, pushing, grasping and fingering to be able to carry out activities of daily living." Id. Plaintiff's pain "can provoke inability to perform" "work related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling." (Tr. 135). Dr. Rodríguez diagnosed plaintiff with cervical radiculopathy, disc desiccation at the T11-T12 level and disc herniation with compression of the cord and stenosis of the canal, cervicalgia, and cervical and lumbar muscle spasms. Plaintiff's prognosis was guarded. Plaintiff presented "no significant response" to the "high doses of Neurontin" she was prescribed. Id.

Dr. Eileen Zayas ("Dr. Zayas"), a state agency physician, reviewed plaintiff's medical records and completed a physical residual functional capacity ("RFC") assessment. (Tr. 379–88). Dr. Zayas indicated that plaintiff had some difficulty with activities of daily living. (Tr. 379). Nevertheless, she was able to drive a car and walk for seven to ten minutes, with a rest period of a half hour. Dr. Zayas concluded that plaintiff retained the capacity to lift or carry

4

twenty pounds occasionally and ten pounds frequently, to stand or walk for six hours per workday, to sit for six hours per workday, and to push or pull without limit. (Tr. 381). Dr. Zayas's determinations were affirmed by Dr. Rafael Queipo ("Dr. Queipo"), a state agency internist. (Tr. 399).

### III.   ANALYSIS

Claims for disability benefits are evaluated according a five-step sequential process. See 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). In this case, plaintiff only contests the ALJ's determination at the fifth and final stage of the analysis. Although a claimant generally bears the burden of proving that he or she is disabled within the meaning of the Social Security Act, see id. at 146 n.5, 146–47, the Commissioner has the burden at the fifth stage "to prove the existence of other jobs in the national economy that the plaintiff can perform." Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Typically, when "a non-exertional impairment 'significantly affects claimant's ability to perform the full range of jobs' he is otherwise exertionally capable of performing," the Commissioner carries this fifth-stage burden "through the use of a vocational expert." Id. at 524 (quoting Lugo v. Sec'y of Health & Human Servs., 794 F.2d 14, 17 (1st Cir. 1986)).

#### A.   Development of the Record

Plaintiff first contends that the Commissioner has been "charged … with the duty to send the claimant to one or more consultative evaluations or examinations at government expense." ECF No. 18, at 7. Plaintiff thus argues that remand is necessary because "the Commissioner did not afford himself the opportunity to have the claimant undergo medical evaluations at his expense[,] [t]hereby … den[ying] himself the opportunity to more fully develop the

5

administrative record ...." Id. at 8.  Ultimately, the "[u]se of a medical advisor in appropriate cases is a matter left to the [Commissioner]'s discretion ...." Rodríguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 5 (1st Cir. 1987) ("[W]e reject claimant's assertion that the [Commissioner] should have arranged for testimony by a medical advisor on remand.").  In circumstances where a claimant's "medical sources cannot or will not give us sufficient medical evidence about [her] impairment for [the Commissioner] to determine whether [she] [is] disabled or blind, [the Commissioner] *may* ask [claimant] to have one or more physical or mental examinations or tests."  20 C.F.R. § 404.1517 (emphasis added); see also 20 C.F.R. § 404.1545(a)(3) ("[B]efore we make a determination that you are not disabled, we are responsible for ... arranging for a consultative examination(s) *if necessary* ...." (emphasis added)); 20 C.F.R. § 404.1512(e) ("We *may* ask you to attend one or more consultative examinations at our expense." (emphasis added)).  In "resolv[ing] any apparent conflicts between the treating physicians' assessments and the opinions of the state agency physicians" to come to an RFC determination, an ALJ is not required to "obtain[] the testimony of a medical expert," because RFC is "an administrative finding reserved to the Commissioner."  Ramos v. Barnhart, 119 F. App'x 295, 296 (1st Cir. 2005).

In this case, plaintiff has not established that the Commissioner failed to develop the record adequately.  In her opinion, the ALJ determined that "claimant's own medical sources is [*sic*] adequate" and that any "inconsistencies in the file" could "be resolved with the evidence available."  (Tr. 15).  According to the ALJ, "the evidence adequately documents the course of the claimant's impairments and treatment," including a "complete medical history for at least 12 months period prior to the month the claimant was last insured for disability insurance purposes ...." Id.  Moreover, as the ALJ notes, plaintiff's insured period expired on March 31,

6

2009. As plaintiff's request for a hearing before an ALJ was made on November 23, 2009, and the hearing was held on May 7, 2010, the use of an examining consultative expert or a testifying medical expert would have occurred months after the expiration of plaintiff's insured period.[5]

Furthermore, as defendant details in her memorandum, the Commissioner in this case has indeed developed plaintiff's medical record. The Commissioner has obtained records from each of the medical sources that plaintiff identified. (Compare Tr. 276–77 with Tr. 389–91). The Commissioner also received evidence from medical sources that plaintiff did not identify. (See Tr. 140–69). Additionally, the ALJ obtained functional assessments from four non-examining state agency consultants. (See Tr. 359–88, 398–400). In her memorandum, plaintiff makes no contention that there was a medical source from whom the Commissioner failed to obtain records.

Plaintiff has cited several cases in support of the proposition that the Commissioner has a duty to "develop or, at least, to assist in the development of the record." ECF No. 18, at 7 (citing Heggarty v. Sullivan, 947 F.2d 990 (1st Cir. 1991); Currier v. Sec'y of Health, Ed. & Welfare, 612 F.2d 594 (1st Cir. 1980); Carrillo Marin v. Sec'y of Health & Human Servs., 758 F.2d 14 (1st Cir. 1985)). Each of these decisions is distinguishable from the case of caption.[6]

In Heggarty, there was "a gap in the record" that could be filled in by "[c]onspiciously absent … records from … claimant's treating physician." 947 F.2d at 997. No evidence was available to the ALJ "from a treating source concerning the extent of claimant's [condition]." Id.

---

[5] Plaintiff argues that the Commissioner is responsible for developing a record to include at least the preceding twelve months. See 42 U.S.C. § 423(d)(5)(B). The Commissioner is only required to "develop [a claimant's] complete medical history for at least the 12 months preceding the month in which [she] file[s] [her] application …." 20 C.F.R. § 416.912(d); see also Smith v. Comm'r of Soc. Sec., 501 F. App'x 875, 878–79 (11th Cir. 2012). Plaintiff filed her initial application on February 19, 2009. As such, the Commissioner was not required to use a consultative or medical expert in order to develop the record more than nine months *after* plaintiff filed her application.

[6] The three cases are analyzed here in the context of whether the ALJ adequately developed the medical record. Whether there was substantial evidence in the medical record before the ALJ to support her RFC determination will be specifically addressed in Part III(B).

"[T]he ALJ's obligation to explore the issue" was "strengthen[ed]" by the fact that "claimant was unrepresented at the hearing." Id. Moreover, "the ALJ specifically had informed claimant that he would arrange to obtain [the treating physician]'s records." Id. The particular circumstances of Heggarty are not present here. Both plaintiff and her attorney were present at the hearing. As discussed above, plaintiff has not pointed to any particular evidence from any of her treating physicians which the ALJ failed to obtain. No conspicuous gap in the medical record has been identified. The ALJ made no promise to plaintiff that she would be assessed by an examining consultant. Rather, the ALJ denied plaintiff's attorney's request to have a medical expert at the hearing. (Tr. 15, 50).

Currier involved a treating psychiatrist whose opinion, upon which the ALJ "principally relie[d]," was "devoid of any reasoned analysis of why [the claimant] … would be able to function any more successfully in the future than he did at his most recent job …." 612 F.2d at 597. "The notes [we]re unaccompanied by any formal opinion and diagnosis explaining to what degree and in what respect [the claimant] may be impaired by his mental illness and relating these deficiencies to the requirements of his former job and other available jobs." Id. Under the "special circumstances" of Currier, where the evidence was particularly "skimpy," the ALJ's decision was unsupported by substantial evidence. Id. at 598. Once again, plaintiff has not identified any flaws in the medical record developed by the ALJ.

Finally, in Carrillo, the defect was that the treating psychiatrist's evidence "was the *only* medical evidence before the ALJ on this point." 758 F.2d at 16 (emphasis in original). In particular, there was *uncontested* evidence that the claimant "[wa]s chronically paranoic[,] … prone to physical aggression, … this condition ha[d] worsened in general since … his treatment began and specifically over the two years prior to the hearing," and exhibited actions at work

8

"characterized by paranoid reactions to his co-workers." Id. In this case, as discussed below, the ALJ relied on various portions of the medical record, including the assessments of state agency experts Dr. Román, Dr. Umpierre, Dr. Zayas, and Dr. Queipo. In contrast, the list of medical evidence in Carrillo did not include the supporting assessments of state agency experts. See id. at 15. "[I]t [i]s appropriate for the ALJ to rely on the reports of the consultative and non-examining physicians in assessing [claimant]'s RFC." Ramos, 119 F. App'x at 296. Thus, the ALJ did not "substitute h[er] *own* impression of [plaintiff]'s health for *uncontroverted* medical opinion." Id. (emphasis added). Plaintiff has not shown that the Commissioner failed to develop her record in any way.

### B.   RFC Determination

Plaintiff also contends that the ALJ's hypothetical to Dr. Puig did not "accurately reflect the medical evidence of record." ECF No. 18, at 13. Specifically, plaintiff argues that there was not substantial evidence to support the portion of the hypothetical indicating that she retained the capacity to perform light work.[7]

In order for a vocational expert's testimony in response to an ALJ's hypothetical question to constitute substantial evidence in support of the Commissioner's decision, "the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Arocho v. Sec'y of Health & Human Services, 670 F.2d 374, 375 (1st Cir. 1982). Nevertheless, "'the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible.'" Simila v. Astrue, 573 F.3d 503, 521 (7th Cir. 2009) (quoting Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007)). As such, the inquiry depends on

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A job involving light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

9

whether there was substantial evidence from the medical authorities to support the ALJ's RFC determination that plaintiff was able to perform light work.[8]

In support of her argument that the ALJ's physical RFC determination was flawed, plaintiff points to evidence from Dr. Torres, an internal medicine specialist, and Dr. Rodríguez, a neurologist. Plaintiff points out that Dr. Torres indicated that she experienced frequent episodes of back pain; numbness of her upper extremities; and decreased strength, sensory capacity, reflexes, and range of motion in her upper back and upper extremities. According to plaintiff, Dr. Torres concluded that his findings "would present difficulties for sitting, standing, walking, lifting, carrying, and handling objects." ECF No. 18, at 14.[9]

Dr. Rodríguez also pointed to plaintiff's daily "severe pain." (Tr. 131, 133). Because of her pain, she was unable to perform certain tasks, such as "reaching, pushing, grasping[,] … fingering[,] … sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling." (Tr. 133, 135). According to Dr. Rodríguez, plaintiff also experienced problems with gross movements and loss of strength. Additionally, she did not present a significant response to the medication she was prescribed.

The ALJ notes that Dr. Torres reported no ataxia or abnormality in gait and station resulting from the decrease in motor function. The ALJ acknowledged that claimant had "moderate physical conditions," but concluded that they were "well controlled" and "did not deteriorate to the point that she could not engage in sustained work routine." (Tr. 23–24). According to the ALJ, the record as a whole indicates that "the degree of the claimant's alleged physical limitations are not fully credible" and even "exaggerated." (Tr. 24). For instance, the

---

[8] Plaintiff does not appear to contest the ALJ's mental RFC determination.
[9] Dr. Torres's remark concerning the aforementioned abilities appears to be illegible. (See Tr. 394). Nevertheless, for purposes of this opinion and order, it will be assumed for the sake of argument that Dr. Torres indicated that his findings "would present difficulties" for said abilities. ECF No. 18, at 14.

ALJ pointed out that there was no indication in the medical evidence that plaintiff had been "referred to a pain management clinic; suffered strong side effects from the prescribed medications; or required assistance with personal needs, Emergency Room services, hospitalizations or any special procedures." (Tr. 23). The ALJ concluded that plaintiff's "weakness, … pain and sensory or reflex abnormalities" did not rise to a "disabling" level or "significantly affect the claimant's extremities." Id. Moreover, there was "no evidence of deterioration or the need for more aggressive treatment." (Tr. 24). While, as noted by Dr. Zayas and the ALJ, plaintiff had some difficulty with activities of daily living, (Tr. 19, 379), plaintiff stated that she did her laundry and light household duties, with the assistance of her sisters; took care of her pets, including cleaning their living area and feeding them; and drove. (Tr. 19, 106–09). Ultimately, the ALJ found that plaintiff's allegations of severe pain were "not supported by objective medical findings." Id. In this case, "the ALJ could properly reject the credibility of claimant's statements concerning the limiting effects of her pain and other symptoms." Barker v. Comm'r of Soc. Sec., 97 F.3d 1445, 1996 WL 578664, at *2 (1st Cir. 1996); see also Medina-Pérez v. Barnhart, 111 F. App'x 621, 2004 WL 2418334 (1st Cir. 2004) (finding substantial evidence to "support the ALJ's conclusion that the claimant was not totally credible in respect to her subjective complaints of pain").

Considering the credibility determinations about plaintiff's allegations of pain, the ALJ concluded that Dr. Zayas's analysis that plaintiff retained the capacity to perform light work was "consistent" with the overall medical record—including the other findings of Dr. Rodríguez and Dr. Torres—and, as such, would be afforded "great weight." (Tr. 25). "This is … not a case in which the nonexamining consultants' reports were the *only* evidence of the claimant's residual functional capacity." Quintana v. Comm'r of Soc. Sec., 110 F. App'x 142, 144 (1st Cir. 2004)

(emphasis added). Dr. Rodríguez's conclusions that plaintiff may experience an "inability" to perform certain functions was based on her allegations of pain, properly given reduced credibility by the ALJ. (Tr. 133, 135). Dr. Torres merely concluded in the end that plaintiff would experience "difficulties" with respect to certain functions. ECF No. 18, at 14. Although Dr. Torres indicates, for instance, that plaintiff experienced a range of motion limited to 45 degrees during trunk flexion and 25 degrees during cervical spine flexion, plaintiff has failed to show how the ALJ's determination that plaintiff was unable to lift or carry ten pounds frequently or twenty pounds occasionally, to sit and stand for about six hours per day, and to engage in unlimited pushing or pulling is inconsistent with Dr. Torres's observation. Ultimately, plaintiff has not shown that Dr. Torres's and Dr. Rodríguez's specific observations and conclusions controvert the ALJ's physical RFC determination. As such, there was substantial evidence supporting the Commissioner's decision.

## IV. CONCLUSION

Based on the foregoing analysis, the Court concludes that the decision of the Commissioner was based on substantial evidence under 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of September, 2013.

s/Marcos E. López
U.S. Magistrate Judge
